UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT VADOVSKY, | : | |
|     Plaintiff | : | NO.: 3:08-CV-01415 |
| | : | |
| v. | : | (JUDGE VANASKIE) |
| | : | (MAGISTRATE JUDGE PRINCE) |
| JEFFREY S. TREAT and LAW | : | |
| OFFICES OF JEFFREY S. | : | |
| TREAT, | : | |
|     Defendants | : | |

## REPORT AND RECOMMENDATION

Pursuant to an Order entered on May 3, 2010 (Doc. 52), Honorable Thomas Vanaskie referred defendant's pending Motion for Summary Judgment to the undersigned Magistrate Judge for the purpose of preparing a Report & Recommendation.

**I. Background**

Plaintiff Robert Vadovsky commenced this lawsuit on July 29, 2008 by filing a complaint (Doc. 1) against defendants Jeffrey S. Treat and Law Offices of Jeffrey S. Treat, alleging legal malpractice, breach of contract, breach of fiduciary duty, fraud, and unjust enrichment. The procedural history and factual background of the case follows.

*(A) Procedural history*

After the filing of the complaint on July 29, 2008 (Doc. 1), defendants answered on August 22, 2008 (Doc. 5). On November 4, the case was referred to Chief United States Magistrate Judge Thomas M. Blewitt for nonbinding mediation (Doc. 9), which ended inconclusively. The Court established a case-management plan on November 6.

(Doc. 14.) Under the case-management plan, plaintiff's original deadline for producing an expert-witness report was June 15, 2009. (*Id.* at p. 2.) This deadline was extended by order of the Court to October 13, 2009 in light of the withdrawal of plaintiff's counsel. (Doc. 42.) Plaintiff sought an extension of time to find new counsel, meanwhile seeking to establish that he needed no expert testimony to support his malpractice claim. (Doc. 46.) He had not by this time, and has not since, filed an expert-witness report. (*Id.*) On October 21, the Court denied plaintiff's request for an extension and permitted the defendants to file a dispositive motion based on the absence of an expert-witness report. (*Id.*) Defendants filed a motion for summary judgment on October 23, 2009, which motion is now before the Court. (Doc. 47.) Both parties have submitted briefing. (Docs. 48–51.)

On May 13, 2010, the undersigned entered an order (Doc. 53) requiring plaintiff to refile his statement of facts with citations to the record, since his first statement of facts (Doc. 50) was devoid of any indication of the evidentiary sources for his factual claims.[1] The deadline for refiling was May 24, 2010, a deadline that has come and gone unheeded by plaintiff.

Federal Rule of Civil Procedure 56(e)(2) states: "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must . . . set out specific facts showing a genuine issue for trial." Local Rule 56.1 builds on this requirement, indicating that a party's statement of material facts supporting or opposing a motion "shall include references to the parts of the record that support the statements."

Lacking any citations to the record, plaintiff's statement of facts is defective, and

---

[1]Under Local Rule 56.1, plaintiff's statement of facts should have been filed as a separate document instead of being subsumed in his memorandum opposing summary judgment. However, given the developments in this case, this point has become moot.

2

having ignored an order of the Court, plaintiff has missed the chance to repair the defect. As a result, plaintiff cannot rely on either the averments in his complaint or in his statement of facts as support for his memorandum opposing summary judgment. Since defendants' statement of facts properly includes citations to the record for each of their factual assertions, the Court adopts defendants' version of the facts in full, which is presented below. *See* Local Rule 7.8(a) ("If counter statements of facts or questions involved are not filed, the statements of the moving party will be deemed adopted.").

*(B) Statement of facts*

Forming the background of this case are two criminal complaints filed, as near as can be determined here, sometime in 2005 or 2006 against Vadovsky in Susquehanna County, Pennsylvania. (*See* Legg's Dep. 5:18–23, Jan. 6, 2009 (mentioning a criminal complaint against Vadovsky in December 2005); Doc. 50, ¶ 1 ("On or about October 16, 2006, Robert Vadovsky received two criminal complaints . . . .").) One led to a misdemeanor charge for removing levied property from the state (Pl.'s Dep. 14:18–17:6, Jan. 12, 2009); the details of this charge (The Rent-E-Quip case) are irrelevant here.

The second criminal complaint (the Lee case), on which this case is centered, gave rise to two third-degree felony counts against Vadovsky: one for theft by failure to make required disposition of funds, and one count of theft by deception. (*Id.* 19:19–20:4.) This second complaint was filed by Claire Lee, a client of Vadovsky's, who had contracted with Vadovsky to replace her septic system. (*Id.* 20:9–14.) Two contracts were involved. The first was for Vadovsky to test Lee's soils and design the septic system for $500; Lee paid and Vadovsky performed the work. (*Id.* 21:9–15.) On the second, Lee paid Vadovsky $11,000 to perform the installation. (*Id.* 21:16–18, 22:20–22.) Vadovsky did not complete the work. (*Id.* 22:23–24.)

While the work on the installation contract was still pending completion,

3

Vadovsky relocated to Florida. (*Id.* 23:1–5.) He did not give any refund to Lee. (*Id.* 23:6–22.)

After Lee submitted a complaint, the Susquehanna District Attorney's Office filed the two felony charges against Vadovsky. (*Id.* 24:8–11.) Vadovsky hired defendant Jeffrey S. Treat to defend him in both the Rent-E-Quip case and the Lee case. (*Id.* 18:22–19:7.) Treat's fee for the representation was $2500. (*Id.* 116:13–16; Doc. 48, ¶ 17.) According to Jason Legg, District Attorney (DA) for the County of Susquehanna, Treat's advocacy resulted in reaching and executing a settlement in the Rent-E-Quip case (Legg's Dep. 11:18–12:17, Jan. 6, 2009), but settling the Lee case did not come so easily.

Several preliminary hearings on the Legg case came and went; Vadovsky failed to appear at any of them, but because of Treat's advocacy and appearances on Vadovsky's behalf, DA Legg did not seek bench warrants for Vadovsky's arrest. (*Id.* 16:15–17:2.) As of April 17, 2007, DA Legg had informed Treat that the amount of restitution owed in the Lee case was $11,500. (*Id.* 24:4–7.) DA Legg or the court—not Treat or Vadovsky—had control over the amount of restitution required. (*Id.* 16–19.) Also on April 17, DA Legg obtained a warrant for Vadovsky's arrest. (*Id.* 23:14–15.) DA Legg did not release the warrant immediately; he waited for ten days before releasing the warrant because Treat had convinced him to allow Vadovsky a chance to make restitution. (*Id.* 24:7–11.) But Vadovsky made no restitution. (*Id.* 24:12–17.)

On April 27, 2007, Vadovsky was arrested in Citrus County, Florida, under the authority of the bench warrant issued in Susquehanna County on April 17. (*Id.* 25:3–21.) On May 1, 2007, DA Legg received a check for $10,000 signed by Melissa Vadovsky, plaintiff's wife, and a check for $1000 from Treat's escrow account. (*Id.* 26:12–27:6.) Because of Treat's advocacy on behalf of Vadovsky, DA Legg agreed to accept $11,000 as restitution instead of the originally demanded $11,500. (*Id.* 27:7–20.) Vadovsky had actually tendered a total of $11,500, even though the settlement amount had been reduced

4

to $11,000. Treat kept the remaining $500. (Pl.'s Dep. 116:13–16, Jan. 12, 2009.) About six months later, following Vadovsky's complaint about Treat's retention of the $500, Treat returned the money to Vadovksy. (*Id.* 118.)

Once the $11,000 restitution was accepted, the criminal charges against Vadovsky for the Lee case were dropped. (Legg's Dep. at 92:18–93:2 (noting DA Legg's observation that Treat's advocacy facilitated the DA's *nolle prosequi* decision).) As a result, Vadovsky's record shows no convictions, felony or misdemeanor, related to any of the criminal charges filed against him in Susquehanna County. (*Id.* 29:24–30:3.) If a prospective employer were to run a criminal background check on Vadovsky, it would reveal that the Florida charge and both of the Pennsylvania charges against him were dismissed. (*Id.* 28:18–29:12.)

**II. Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for

5

the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

**III. Discussion**

Plaintiff's complaint originally contained five counts: legal malpractice; breach of contract; breach of fiduciary duty; unjust enrichment; and fraud. (Doc. 1.) All of these claims are state-law claims over which the Court has diversity jurisdiction under 28 U.S. § 1332. Accordingly, substantive state law and procedural federal law apply.

In his memorandum opposing summary judgment, plaintiff voluntarily withdrew the claims for fraud and unjust enrichment (Doc. 50, at 8), leaving the first three counts for consideration here.

### (A) Legal malpractice

A claim for malpractice asserts that the defendant–attorney was in some way negligent in providing representation for the plaintiff–client. Pennsylvania recognizes a distinction between claims against an attorney for alleged malpractice in civil cases and in criminal cases. Because the matter underlying plaintiff's malpractice claim is a criminal case, surviving a summary-judgment motion would require plaintiff to establish the following elements:

(1) The employment of the attorney;
(2) Reckless or wanton disregard of the defendant's interest on the part of the attorney;
(3) [T]he attorney's culpable conduct was the proximate cause of an injury suffered by the defendant/plaintiff, i.e., "but for" the attorney's conduct, the defendant/plaintiff would have obtained an acquittal or a complete dismissal of the charges.
(4) As a result of the injury, the criminal defendant/plaintiff suffered damages.
(5) Moreover, a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief [that] was dependent upon attorney error . . . .

*Slaughter v. Rushing*, 453 Pa. Super. 379, 383 (1996) (quoting *Bailey v. Tucker*, 621 A.3d 108, 114–15 (Pa. 1993) (first alteration in original).

The fact that in this case, defendant–attorney Treat did negotiate settlements and achieve complete dismissal of all criminal charges against plaintiff Vadovsky obviates any need for detailed or lengthy discussion. The kind of injury that a criminal-malpractice action recognizes—wrongful conviction—is not present here, because Vadovsky was not convicted. Defendant–attorney Treat's advocacy led to the District Attorney's decision to

7

drop all charges in the case. The impossibility of establishing that defendant's negligence was the proximate cause of a wrongful conviction is conclusive.

Even were plaintiff's claim of malpractice analyzed under the standard applicable to civil-malpractice claims, the outcome would be no different. For a civil claim, plaintiff would have to prove "(1) the employment of the attorney or other basis for duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." *Storm v. Golden*, 538 A.2d 61, 64 (Pa. Super. 1988) (citing, *e.g.*, *Trice v. Mozenter*, 515 A.2d 10 (Pa. Super. 1986); *Schenkel v. Monheit*, 405 A.2d 493, 494 (Pa. Super. 1979)).

Making a case for the second element, failure to exercise ordinary skill and knowledge, requires a plaintiff to establish the standard of ordinary skill and knowledge. Only if the issue "is simple, and the lack of skill obvious" can "the ordinary experience and comprehension of lay persons" establish the standared of care. *Rizzo v. Haines*, 555 A.2d 58, 66 (Pa. 1989) (citing *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 481 (3d Cir. 1979)). Case law and legal scholarship provides examples of standards of care not requiring expert testimony: when the attorney misses a filing deadline or allows a statute of limitations to expire (*see* Doc. 50, at 12); breach of the duty to investigate and inform one's client of settlement offers, *Rizzo*, 555 A.2d at 66–67 (Pa. 1989); or engaging in financial transactions with one's client, *id.* at 67. These examples are exceptions to the general rule that "expert testimony is necessary to establish negligent practice in any profession." *Storm v. Golden*, 538 A.2d 61, 64 (Pa. Super. 1988) (quoting *Powell v. Risser*, 99 A.2d 454, 456 (1953)).

Among the alleged breached duties listed in plaintiff's complaint are the duty to advise, the duty to resolve the Lee case, the duty of diligence, and the duty of honest and timely dealing with the client. These duties are not clear-cut, simple, statutorily defined duties a breach of which can be made obvious by reference to a published legal authority.

8

*See Rizzo*, 555 A.2d at 67 (holding expert testimony unnecessary because the obligations at issue were "established by law, the Code of Professional Responsibility, and the Model Rules of Professional Conduct"). Rather, "[w]hether an attorney failed to exercise a reasonable degree of care and skill related to common professional practice . . . is a question of fact outside the normal range of the ordinary experience of laypersons." *See Storm*, 538 A.3d at 65 (holding the same in the context of handling a real-estate transaction). Because plaintiff declined to submit an expert-witness report as required by Fed. R. Civ. P. 26(a)(2)(B), he will be unable to establish the standard of care for any of these alleged breaches of duty.

The single allegation in plaintiff's malpractice claim that would not require support from expert testimony is contained in paragraph 90(h), which alleges a violation of the "duty to properly maintain in escrow and account for payments made by Mr. Vadovsky to defendants, for the purposes of being paid to Claire Lee to settle the underlying dispute." (Doc. 1, ¶ 90(h).) Determining a violation of this duty would be a simple matter, as an attorney's obligations regarding handling of funds are explicitly detailed in the Pennsylvania Rules of Professional Conduct. *See* Pa. R.P.C. 1.15(a) ("A lawyer shall hold property of clients . . . separate from the lawyer's own property."); *Id.* 1.15(c) ("When in connection with a client-lawyer relationship a lawyer is in possession of property in which two or more persons, one of whom may be the lawyer, claim an interest, the property shall be kept separate by the lawyer until the dispute is resolved."); *Id.* cmt. [1] ("Whenever a lawyer holds funds of a client or third person, the lawyer must maintain at least two accounts: one in which those funds are held and another in which the lawyer's own funds may be held.").

The evidence before the Court shows that Treat settled the complaint in the Lee case for $11,000, which left an additional $500 of Vadovsky's money in Treat's possession. (Doc. 48, ¶¶ 16–17.) When Vadovsky complained about Treat's retention of

9

the money, Treat returned the $500 to Vadovsky (*id.* ¶ 18) instead of keeping the money separate until the dispute was resolved as required by Pa. R.P.C. 1.15(c). Here, Treat owed Vadovsky a clear duty to hold the funds separately, which he did not do, thus clearly breaching his duty.

However, it would still be incumbent upon Vadovsky to show that the breach of Treat's duty was the proximate cause of harm to Vadovsky. There is no evidence before the Court that any harm resulted from Treat's decision to return the $500 to Vadovsky following Vadovsky's complaint. Without any evidence of causation or harm, plaintiff cannot maintain a claim on the basis of a violation of Pa. R.P.C. 1.15. *Schenkel v. Monheit*, 405 A.2d 493, 494 (Pa. Super. 1979) (quoting *Budd v. Nixen*, 491 P.2d 436–37 (Ca. 1971)) ("The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm does not suffice to create a cause of action for negligence.").

### *(B) Breach of contract*

In a claim based on breach of an attorney–client agreement, the attorney's liability "must be assessed under the terms of the contract." *Fiorentino v. Rapoport*, 693 A.2d 208, 213 (Pa. Super. 1997) (citing *Bailey v. Tucker*, 621 A.2d 108, 115 (Pa. 1993)). A prima facie case requires pleading "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999) (citing *Gen. State Auth. v. Coleman Cable & Wire Co.*, 365 A.2d 1347, 1349 (Pa. Commw. 1976)).

In this case, plaintiff alleges that defendant breached a contractual term by which defendant was "to defend[] plaintiff's interests in the dispute, and to take the necessary action to reach a settlement with Claire Lee." (Doc. 1, ¶ 97.) However, there is no evidence that this term was breached; to the contrary, testimony from DA Legg as well as

Vadovsky himself shows that defendant–attorney Treat did defend Vadovsky's interests and did reach a settlement in the Lee case. (Doc. 48, ¶ 16; Pl.'s Dep. 62:1–17, Jan. 12, 2009; Legg's Dep. 27:7–20, Jan. 6, 2009.) Plaintiff has not adequately supported a claim for breach of contract.

*(C) Breach of fiduciary duty*

In the context of the case at bar, there is no appreciable difference between the analysis for a breach of fiduciary duty and the analysis for a legal-malpractice claim. All of the duties that in Count III plaintiff alleged defendant to have breached would, like the duties at issue in Count I, require expert testimony to establish the applicable standard of care. As plaintiff has filed no expert-witness report and has no intention of using expert-witness testimony, no discussion particular to Count III of the complaint is necessary. Plaintiff cannot meet his burden of proof without the expert testimony he has chosen not to give.

**IV. Conclusion**

It is recommended, therefore, that defendant's motion for summary judgment be granted on all counts, and that plaintiff's complaint be dismissed.

s/ William T. Prince  
William T. Prince  
United States Magistrate Judge

June 11, 2010